Mark DOSS and Kathy Doss,
Plaintiffs–Respondents,

v.

HOWELL–OREGON ELECTRIC
COOPERATIVE, INC.,
Defendant,

and

Missouri Employers Mutual Insurance
Co., Appellant.

No. 26270.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 2, 2005.

Petition for Rehearing and Transfer
Denied Feb. 24, 2005.

David A. Childers, Whiteaker & Wilson, P.C., Springfield, Mo., for appellant.

Mathew W. Placzek and Angela Desanctis Myers, Placzek & Francis, Springfield, Mo., for respondents.

JAMES K. PREWITT, Judge.

Missouri Employers Mutual Insurance Company ("Insurance Company") appeals from the judgment of the trial court sustaining a Motion to Determine Workers' Compensation Lien filed by Mark Doss and Kathy Doss. Insurance Company raises two points of error; first, that the trial court erred in ruling on the motion because the court lacked both personal and subject matter jurisdiction in the matter, and second, that the trial court erred in ruling that the workers' compensation lien held by Insurance Company should be reduced by fifty percent, due to Mark's alleged comparative fault.[1]

**Facts**

On October 4, 1999, while responding to a fire as a volunteer member of the Howell County Fire Department ("Employer"), Mark Doss suffered a severe electric shock and burns. Mark filed a workers' compensation claim against Employer; Insurance Company was Employer's insurer. A stipulation for compromise settlement resulted in a workers' compensation lien in the amount of $40,233.35.

On July 19, 2001, the Dosses filed a petition alleging a cause of action against Howell–Oregon Electric Cooperative, Inc. ("Electric Co-op"), which, according to the Dosses, had sole control and management of a fallen power line that allegedly led to Mark's electric shock. A Second Amended Petition was filed on April 15, 2002, and contained four counts alleging damages due to Electric Co-op's negligence, including a loss-of-consortium claim brought by Kathy. In its answer, Electric Co-op alleged that any damages the Dosses "sustained were directly caused or contributed to be caused by the negligence and fault of plaintiff, Mark Doss[.]"

In a letter to the court dated May 1, 2003, counsel for the Dosses informed the court that the case had been settled. On May 9, 2003, the Dosses filed a Motion to Determine Workers' Compensation Lien, which indicated that the case had been settled for $180,000.00. Within the motion, the Dosses stated that they and Insurance Company had "attempted to negotiate a settlement with respect to the satisfaction of the [workers' compensation] lien, but have been unable to do so because there is a dispute between the parties as to what sum, if any, should be deducted for plaintiff Mark Doss' alleged contributory negligence." The Dosses asked that the court determine the amount owed to Insurance Company on the workers' compensation lien.

On May 29, 2003, the Dosses filed a Dismissal with Prejudice indicating their

---

1. When referring to either Mark or Kathy Doss individually, we will use their first names. We mean no disrespect.

intention to "dismiss all pending claims against [Electric Co-op]." On June 13, 2003, the trial court entered an order holding the dismissal of the case in abeyance pending the court's decision on the Dosses' Motion to Determine Workers' Compensation Lien.

A hearing was held on the Dosses' motion on September 16, 2003. Counsel for Insurance Company indicated that Insurance Company was "not technically a party to this action ... [and that] no personal jurisdiction's really ever been asserted over [it]." He agreed that the hearing held that day was on the Dosses' motion "to have the subrogation proceeds from the settlement between [the Dosses and Electric Co-op] divided." All parties, including Insurance Company, agreed at the hearing that if the workers' compensation payment was fully subrogated, i.e., no comparative fault on Mark's part, the amount subrogated to Insurance Company would be $23,574.70.

The Dosses' position was that the settlement between them and Electric Co-op for $180,000.00 "presupposed a contributory negligence of fifty percent." Therefore, according to the Dosses, the total damages reflected in the settlement were actually $360,000.00, which would result in a reduction in the subrogation amount due to Insurance Company on the workers' compensation lien.

Counsel for Insurance Company argued that the trial court lacked subject matter jurisdiction to make a determination regarding any adjustment to the subrogation amount for the workers' compensation lien. Counsel did, however, acknowledge that it was correct for the court to state that neither Kathy's share for her loss-of-consortium claim nor the issue of comparative fault had been addressed in the negotiation and settlement between the Dosses and Electric Co-op or by a trier-of-fact in the determination of that case. Therefore, according to the court, "there is no ... preclusion" with regard to those issues. Although counsel for Insurance Company agreed with the court's statements, he noted that neither Insurance Company nor Employer "were a party to those negotiations or to that settlement."

The court proceeded, pursuant to discussions in chambers, to receive "a proffer in lieu of live testimony[.]" Counsel for the Dosses then offered that the attorney for Electric Co-op would testify that he was present at the mediation between the Dosses and Electric Co-op, that the mediation led to a negotiated settlement, and that Electric–Co–op "discounted the settlement value of the case fifty percent because of plaintiff Mark Doss's contributory negligence." The Dosses' counsel also noted that he "would take the stand and testify to the same effect."

In addition, counsel for the Dosses stated that if the fire chief was called to testify, he would state that prior to Mark arriving at the scene, there were radio communications available for Mark to hear indicating that "a live power line [was] down and that people should be careful." Further, counsel stated that a neighboring homeowner, if called to testify, would state that he spoke with Mark and two other firefighters at the scene and told them "that there was a hot line."

Counsel for the Dosses also stated that there would be testimony either from Mark and Kathy, or counsel himself, "that there was no apportionment of the settlement proceeds between Mark and Kathy Doss because [the Dosses and their counsel] have always taken the position that this is a matter exclusively for the trier of fact." When asked by the court to provide further explanation of the facts related to the consortium claim, counsel for the Dosses indicated that he would describe Mark's

injuries, the lengthy hospital stay, necessary grafts, and substantial time off work. There would also be testimony regarding the effects on Mark, Kathy, and their children due to Mark's injuries. Counsel for the Dosses stated that they would "ask the court to allocate the settlement seventy-five percent to [Mark] and twenty-five percent to [Kathy]."

At the end of the hearing, Exhibits 1, 2, and 3 were received into evidence by the court. These documents included the Stipulation for Compromise Settlement in the workers' compensation case; a letter from the Dosses' counsel to the Dosses outlining attorney fees and expenses and the total calculated sum remaining on the workers' compensation lien ($23,640.12); and a letter from the Dosses' counsel to counsel for Insurance Company noting that if fifty percent was deducted for Mark's contributory negligence, $11,820.06 would be owed to Insurance Company.

The letter to counsel for Insurance Company included an offer to settle the case of the workers' compensation lien amount for $12,319.95. The letter also included a note that the computations did "not account for Kathy Doss' consortium claim which will also diminish the amount the comp carrier is entitled to receive." The note further stated that the Dosses would "ask for that offset at the hearing."

On March 30, 2004, the court entered its judgment on the Dosses' Motion to Determine Workers' Compensation Lien. The court found that of the $180,000.00 settlement amount, seventy-five percent was attributable to Mark's claims, and thus subject to the workers' compensation lien, and that twenty-five percent was attributable

to Kathy's loss-of-consortium claim. The court also apportioned fifty percent fault to Mark and fifty percent fault to Electric Co-op. Therefore, according to the findings of the court, the total of damages sustained by Mark was $270,000.00 and the total of damages sustained by Kathy was $70,000.00.[2]

Regarding the workers' compensation lien, the court noted that the parties stipulated that the amount of the lien, after deducting for attorney fees and expenses, was $23,574.70. Therefore, according to the court, since Mark only recovered fifty percent of the total damages sustained, the workers' compensation lien should also be reduced by fifty percent, resulting in a lien of $11,787.35. The Dosses were ordered to pay the $11,787.35 to Insurance Company to satisfy the workers' compensation lien. This appeal followed.

### Discussion

Insurance Company raises two points on appeal. We find the first point dispositive. *Point I—Trial court lacked both personal and subject matter jurisdiction to rule on motion*

■ In its first point, Insurance Company contends that the trial court erred in ruling on the Dosses' Motion to Determine Workers' Compensation Lien because the court was without either personal or subject matter jurisdiction in the matter. According to Insurance Company, the court lacked such jurisdiction because the Dosses had voluntarily dismissed their claim with prejudice.

■ The term jurisdiction is often somewhat loosely employed but generally

---

2. We note that $270,000.00 represents 75% of $360,000.00, but 25% of $360,000.00 is $90,000.00, rather than the $70,000.00 stated in the judgment. Based on an apportionment of 50% fault to each Mark and Electric Co-op, the total damages sustained would be $360,000.00 (twice the settlement amount of $180,000.00). The numbers in the judgment reflect an amount for total damages sustained of $340,000.00.

refers to three kinds of authority of a court: over the person; over the subject matter; and to render the judgment or order given. *Scott County Reorganized R–6 School Dist. v. Mo. Comm'n on Human Rights,* 872 S.W.2d 892, 893 (Mo.App. 1994). In the strict sense, jurisdiction refers to judicial authority over the subject matter and the parties. *Id.* In a broader sense, the jurisdiction of a court includes the power to grant specific relief in cases in which it has judicial authority over the subject matter and parties. *Id.*

▮ If a trial court enters a judgment that was beyond its jurisdiction, that judgment is void. *Cramer v. Carver,* 125 S.W.3d 373, 375 (Mo.App.2004). Even if jurisdictional issues are not raised, we are obligated to consider whether a trial court had the jurisdiction to enter the judgment. *In re Marriage of McIntosh,* 126 S.W.3d 407, 418 (Mo.App.2004).

Within Point I, Insurance Company focuses on the trial court's apparent lack of jurisdiction due to the Dosses' voluntary dismissal of their claims against Electric Co-op with prejudice. We need not address whether that argument has merit because we find that the trial court lacked jurisdiction to enter the judgment sustaining the Dosses' Motion to Determine Workers' Compensation Lien for other reasons, primarily because Insurance Company was not a party to the Dosses' case against Electric Co-op.

To show how we arrive at that finding, we first consider some background. Under the workers' compensation law, specifically § 287.150, RSMo 2000, Mark, as the employee, and Employer are considered real parties in interest, and either could bring a suit against Electric Co-op as a third-party tortfeasor stemming from the incident in which Mark was injured. *Brookshire ex rel. Brookshire v. Retz,* 111 S.W.3d 920, 923 (Mo.App.2003). The

claims of Employer and Insurance Company under the statute include the right to proceed against a third-party tortfeasor (Electric Co-op) to recover any payments Employer or Insurance Company made to Mark as employee. *Id.*

Section 287.150.3, RSMo 2000, which is applicable to this case, reads in pertinent part as follows:

Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee, or the total damages determined by the trier of fact if there is a finding of comparative fault on the part of the employee.

The manner in which rights under § 287.150, RSMo 2000 may be invoked, which may lead to a workers' compensation insurance carrier who paid workers' compensation benefits to an employee recouping those payments from the third-party tortfeasor, need not take a singular form. The insurance carrier may intervene in the suit brought by the employee (or the employee's representatives) against the third-party tortfeasor. *See Brookshire,* 111 S.W.3d at 923; *Barker v. H & J Transporters, Inc.,* 837 S.W.2d 537, 538 (Mo.App.1992). The insurance carrier may file a separate suit against the third-party tortfeasor after a cause of action between the employee and third person has been settled or arrived at a verdict.

*See Home Ins. Co. v. Carmar Group, Inc.,* 926 S.W.2d 564, 565 (Mo.App.1996).

Other options include the insurance carrier filing a declaratory judgment action against the employee after the employee's suit against the third-party tortfeasor has been resolved. *See Liberty Mut. Ins. Co. v. Garffie,* 939 S.W.2d 484, 485 (Mo.App. 1997). Yet another method is for the employee to file a declaratory judgment action against the insurance carrier when the parties are unable to agree on the application of § 287.150.3, RSMo 2000. *Kerperien v. Lumberman's Mut. Cas. Co.,* 100 S.W.3d 778, 780 (Mo.banc 2003); *Yaakub v. Aetna Cas. & Sur. Co.,* 882 S.W.2d 743, 743–44 (Mo.App.1994). We also find cases in which an employee's attorney or an attorney for one of the employee's dependents files an interpleader action to determine the appropriate distribution of settlement proceeds. *See William H. Pickett, P.C. v. American States Family Ins. Co.,* 857 S.W.2d 309, 310 (Mo.App.1993); *Menees v. Nat'l Super Mkts., Inc.,* 863 S.W.2d 378, 379 (Mo.App.1993).

Among the various options available to apply the principles from § 287.150.3, RSMo 2000, we find no case in which a judgment was rendered affecting the workers' compensation lien in which the party who paid the workers' compensation benefits or held the workers' compensation lien, either the insurance carrier or the employer, was not a party to the action at the time the judgment was rendered.

The situation we have here is one in which the employee (and his wife) filed suit against Electric Co-op, the third-party tortfeasor. Insurance Company was neither a plaintiff nor a defendant in that action brought by the Dosses. Insurance Company did not intervene in the action, and no one sought to add Insurance Company as a party. The Motion to Determine Workers' Compensation Lien lists the Dosses as the only plaintiffs and Electric Co-op as the only defendant and carries the same case number as the petition.

■■■ Although Insurance Company had a right to seek to intervene into the Dosses' case against Electric Co-op, it is well established that "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree." *Wilkes v. St. Paul Fire & Marine Ins. Co.,* 92 S.W.3d 116, 123 (Mo.App.2002). Therefore, Insurance Company had no duty to intervene; the burden of joining additional parties, if indicated, is placed on the parties already in the lawsuit. *Id.* As well, in general terms, a failure to intervene by an insurance carrier does not waive its right to reimbursement or subrogation. *See Buatte v. Gencare Health Systems, Inc.,* 939 S.W.2d 440, 442 (Mo.App.1996).

■■■ Missouri courts have consistently held that no judgment can be granted against someone who is not a party to the case. *State ex rel. American Family Mut. Ins. Co. v. Scott,* 988 S.W.2d 45, 47 (Mo. App.1998). The determination of whether someone is or becomes a party to the action takes into account whether the person or entity was designated as a party in the petition and whether the person or entity intervened. *Id.* at 48. If the person or entity was not a party to the action at the time of the judgment, a trial court acts in excess of its jurisdiction by entering a judgment against that person or entity. *Id.* at 48–49.

That was the situation here. The trial court entered a judgment that was beyond its jurisdiction; thus, that judgment is void. *Cramer,* 125 S.W.3d at 375. On this basis, the judgment must be reversed.

## Conclusion

The trial court's judgment sustaining the Dosses' Motion to Determine Workers' Compensation Lien and ordering the Dosses' to pay Insurance Company $11,787.35 to satisfy the workers' compensation lien is reversed. The cause is remanded to the trial court with directions for it to deny the Motion to Determine Workers' Compensation Lien and take no further action regarding said motion except as may be related to costs of this action.

GARRISON, P.J., and RAHMEYER, J., concur.